## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **STEVEN DALEY**, on behalf of himself and all other similarly situated individuals,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>**BETTERMENT LLC**,<br><br>　　Defendant. | Case No. 1:26-cv-1058<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Steven Daley ("Plaintiff"), individually and on behalf of all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through his undersigned counsel, files this Class Action Complaint against Betterment LLC ("Defendant" or "Betterment") and alleges the following based on personal knowledge of facts, upon information and belief, and based on the investigation of his counsel as to all other matters.

### I.　　NATURE OF THE ACTION

1.　　Plaintiff brings this class action lawsuit against Defendant for its failure to protect and safeguard Plaintiff's and the Class's highly sensitive personally identifiable information ("PII"). As a result of Defendant's negligence and insufficient data security, cybercriminals easily infiltrated Defendant's inadequately protected network and on or around January 9, 2026, and accessed the PII of Plaintiff and the Class (the "Data Breach" or "Breach"). Now, Plaintiff's and the Class's PII is in the hands of cybercriminals who will undoubtedly use their PII for nefarious purposes for the rest of their lives.

2.　　In addition to accessing the PII of Plaintiff and the Class, the threat actor also sent a fraudulent email on January 9, 2026, to Plaintiff and the Class using Betterment's marketing

system. This email (which looked like any other email from Betterment) informed the Class to send crypto to a crypto wallet owned by the threat actor in return for "tripling Bitcoin and Ethereum deposits."[1]

3.    Betterment is financial technology firm that offers a variety of financial services including investing, savings, cryptocurrency, and checking. Betterment has over one million customers and more than $65 billion of assets it manages.[2]

4.    Upon information and belief, the PII accessed and acquired in the Data Breach includes names, dates of birth, physical addresses, phone numbers, device information, geographic locations, employers', and job titles ("Private Information").[3]

5.    Plaintiff and the Class are current and former users of Defendant's financial services.

6.    As part of its business practices, Betterment obtains, collects, uses, and derives a benefit from the PII of Plaintiff and Class Members. As such, Defendant assumed the legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

7.    This class action seeks to redress Defendant's unlawful, willful and wanton failure to reasonably protect the sensitive PII of the Plaintiff and Class Members, in violation of Defendant's legal obligations. Defendant failed to properly safeguard and protect the PII in its possession, thereby allowing cybercriminals the opportunity to steal Plaintiff's and Class Members' valuable PII from Defendant's inadequately protected computer and network systems.

---

[1] *See* **Exhibit 1**; https://www.betterment.com/customer-update#:~:text=Update%20on%20our%20investigation (last visited Feb. 6, 2026).
[2] https://www.betterment.com/about (last visited Feb. 6, 2026).
[3] https://haveibeenpwned.com/Breach/Betterment (last visited Feb. 6, 2026).

8.    On or about January 10, 2026, Betterment discovered that an unauthorized third party had gained access to certain Betterment information systems. In response, Defendant launched an investigation which determined that the unauthorized access came from a successful social engineering scheme.[4]

9.    The notorious cybercriminal group "ShinyHunters" has claimed at least partial responsibility for the Data Breach, and they subsequently leaked tens of millions of Betterment records on the dark web.[5]

10.    Upon information and belief, due to Defendant's negligence, cybercriminals have accessed and obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

11.    Plaintiff and Class Members have all suffered injury as a result of the Defendant's negligent conduct, including: (i) the potential for Plaintiff's and Class Members' exposed PII to be sold and distributed on the dark web, (ii) a lifetime risk of identity theft, sharing, and detrimental use of their sensitive information, (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII, (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (v) the continued and increased risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to take appropriate and adequate measures to protect its customer's PII.

---

[4] https://www.betterment.com/customer-update#:~:text=Update%20on%20our%20investigation (last visited Feb. 6, 2026).

[5] https://www.theregister.com/2026/02/05/betterment_hack/ (last visited Feb. 6, 2026); *See also* https://www.theregister.com/2026/01/26/shinyhunters_okta_sso_campaign/ (last visited Feb. 6, 2026).

12.    Further, Plaintiff and Class Members are at significant risk of identity theft and various other forms of personal, social, and financial harm.

13.    Now, and for the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft have to spend time responding to the Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach. Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their Private Information, loss of privacy, and/or additional damages as described below.

14.    In sum, Plaintiff and the Class will face an imminent risk of fraud and identity theft for the rest of their lives because: (i) Defendant failed to protect Plaintiff's and the Class's Private Information, allowing a large and preventable Data Breach to occur; (ii) the cybercriminals who perpetrated the Breach accessed Private Information that they will sell on the dark web (if they have not already) because that is the *modus operandi* of cybercriminals who perpetrate breaches such as this; (iii) Defendant failed to timely discovery the Breach; and (iv) Defendant failed to timely notify Plaintiff and the Class of the Breach.

15.    Plaintiff brings this action individually and on behalf of the Class, seeking compensatory damages, punitive damages, nominal damages, restitution, and injunctive and declaratory relief, reasonable attorney fees and costs, and all other remedies this Court deems proper.

## II.    THE PARTIES

16.    Plaintiff **Steven Daley** is an individual domiciled in Lubbock, Texas. Plaintiff is a Betterment customer that received the above referenced fraudulent email and, upon information and belief, is a victim of the Data Breach.

17.    Defendant **Betterment LLC** is a Delaware limited liability company with its principal place of business located at 450 West 33rd Street, Floor 11, New York, NY 10001. Defendant's registered agent is Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

## III.    JURISDICTION AND VENUE

18.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) Plaintiff and numerous Class Members are citizens of a different state that is diverse from the Defendant, and (4) there are more than 100 Class Members.[6]

19.    The Court has general personal jurisdiction over Defendants because Defendants are citizens of New York, are registered to do business in New York, and have their principal place of business in this District.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants' principal place of business is in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's clams occurred in this District.

---

[6] Reports have suggested that more than one million Betterment customers were affected. *See* https://haveibeenpwned.com/Breach/Betterment (last visited Feb. 6, 2026).

### IV.    FACTUAL ALLEGATIONS

**A.  Defendant and its Collection of Plaintiff's and the Class's PII.**

21.    Betterment is financial technology firm that offers a variety of financial services including investing, savings, cryptocurrency, and checking. Betterment has over one million customers and more than $65 billion of assets it manages.[7]

22.    As part of its business practices, Betterment obtains, collects, uses, and derives a benefit from the PII of Plaintiff and Class Members.

23.    Betterment obtains, collects, uses, and derives a benefit from the Private Information of Plaintiff and Class Members. Defendant uses the Private Information it collects to provide financial services, making a profit therefrom. Defendants would not be able to obtain revenue if not for the acceptance and use of Plaintiff's and the Class's Private Information

24.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure

25.    Betterment knew of its obligations to safeguard Plaintiff's and Class Members' Private Information and made representations in its privacy policy which states in relevant part:

> Betterment works diligently to protect your personal information. We employ several physical and electronic safeguards to keep your information safe. We use the strongest available browser encryption, store all of our data on servers in secure facilities, and implement systematic processes and procedures for securing and storing data. We limit access to your personal and financial information to only those employees with authorized access who need to know the information in order to perform their jobs, and we require third

---

[7] https://www.betterment.com/about (last visited Feb. 6, 2026).

parties who perform services for Betterment to agree to keep your information confidential.[8]

26.     Contrary to its representations, Defendant failed to adopt reasonable and appropriate data security practices and procedures including administrative, physical security, and technical controls to safeguard Plaintiff's and the Class's Private Information.

27.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

28.     As a result of Defendant's negligence, Plaintiff's and Class Members' Private Information was accessed and/or stolen from Defendant's inadequately secured network in a large and preventable Data Breach.

**B.  Defendant's Data Breach.**

29.     On or about January 9, 2026, cybercriminals infiltrated Defendant's inadequately protected network and accessed Plaintiff's and Class Member's PII.

30.     In addition to accessing the PII of Plaintiff and the Class, the threat actor also sent a fraudulent email on January 9, 2026, to Plaintiff and the Class using Betterment's marketing system. This email (which looked like any other email from Betterment) informed the Class to send crypto to a crypto wallet owned by the threat actor in return for "tripling Bitcoin and Ethereum deposits."[9]

---

[8] https://www.betterment.com/legal/privacy-policy (last visited Feb. 6, 2026).
[9] *See* **Exhibit 1**; https://www.betterment.com/customer-update#:~:text=Update%20on%20our%20investigation (last visited Feb. 6, 2026).

31.    Upon information and belief, the PII accessed and acquired in the Data Breach includes names, dates of birth, physical addresses, phone numbers, device information, geographic locations, employers', and job titles.[10]

32.    On or about January 10, 2026, Betterment discovered that an unauthorized third party had gained access to certain Betterment information systems. In response, Defendant launched an investigation which determined that the unauthorized access came from a successful social engineering scheme.[11]

33.    The notorious cybercriminal group "ShinyHunters" has claimed at least partial responsibility for the Data Breach, and they subsequently leaked tens of millions of Betterment records on the dark web.[12]

34.    Upon information and belief, individualized notices have yet to be mailed or otherwise sent to affected individuals.

35.    Defendant was negligent and did not use reasonable security procedures and industry standard practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information for Plaintiff and Class Members.

36.    Betterment could and should have prevented this Data Breach by ensuring the files and servers containing Plaintiff's and Class Members' Private Information were properly secured and encrypted but failed to do so

---

[10] https://haveibeenpwned.com/Breach/Betterment (last visited Feb. 6, 2026).
[11] https://www.betterment.com/customer-update#:~:text=Update%20on%20our%20investigation (last visited Feb. 6, 2026).
[12] https://www.theregister.com/2026/02/05/betterment_hack/ (last visited Feb. 6, 2026); *See also* https://www.theregister.com/2026/01/26/shinyhunters_okta_sso_campaign/ (last visited Feb. 6, 2026).

37.     Because Defendant had a duty to protect Plaintiff's and Class Members' Private Information, Betterment should have known through readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

38.     All in all, Defendant failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized access and exploitation.

39.     Defendant's actions represent a flagrant disregard of the rights of Plaintiff and the Class, both as to privacy and property.

40.     As such, Plaintiff and the Class have suffered harm and continue to be at an imminent and impending risk of identity theft and fraud.

**C. Cybercriminals Have Used and Will Continue to Use Plaintiff's and the Class's PII to Defraud Them.**

41.     PII is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and the Class Members and to profit from their misfortune.

42.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[13]

43.     For example, with the PII stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and

---

[13] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

many other harmful forms of identity theft.[14] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and the Class Members.

44.    PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[15]

45.    This was a financially motivated Breach, as the only reason the cybercriminals go through the trouble of running targeted cyberattacks against companies like Defendant is to get ransom money and/or information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein.

46.    Indeed, a social security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[16]

47.    "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[17]

48.    These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, ***they will use it***.[18]

---

[14] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[15] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, available at https://www.gao.gov/products/gao-07-737.

[16] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web* (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[17] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[18] Ari Lazarus, *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

49.     Hackers may not use the information right away, but this does not mean it will not

be used. According to the U.S. Government Accountability Office, which conducted a study

regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more
> before being used to commit identity theft. Further, once stolen data
> have been sold or posted on the Web, fraudulent use of that
> information **may continue for years**. As a result, studies that attempt
> to measure the harm resulting from data breaches cannot necessarily
> rule out all future harm.[19]

50.     Identity theft victims must spend countless hours and large amounts of money

repairing the impact to their credit so as to protect themselves in the future.[20]

51.     Defendant's limited offer of identity monitoring to Plaintiff and the Class is

woefully inadequate and will not fully protect Plaintiff from the damages and harm caused by its

failures.

52.     The full scope of the harm has yet to be realized. There may be a time lag between

when harm occurs versus when it is discovered, and also between when PII is stolen and when it

is used.

53.     Once the limited time has expired, Plaintiff and Class Members will need to pay

for their own identity theft protection and credit monitoring for the rest of their lives due to

Defendant's gross negligence.

54.     Furthermore, identity monitoring only alerts someone to the fact that they have

already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's

---

[19] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited;
However, the Full Extent Is Unknown,* GAO (July 5, 2007), available at
https://www.gao.gov/products/gao-07-737.
[20] *Guide for Assisting Identity Theft Victims,* FEDERAL TRADE COMMISSION (Sept. 2013),
*available at* https://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-
Victims.pdf.

PII)—it does not prevent identity theft.[21]  Nor can an identity monitoring service remove personal information from the dark web.[22]

55.     "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[23]

56.     As a direct and proximate result of the Data Breach, Plaintiff and the Class have been damaged and have been placed at an imminent, immediate, and continuing increased risk of harm from continued fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

57.     Even more seriously is the identity restoration that Plaintiff and other Class Members must go through, which can include spending countless hours filing police reports, filling out IRS forms, Federal Trade Commission checklists, Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiff and the Class must take.

58.     Plaintiff and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

---

[21] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, CNBC (Nov. 30, 2017, 9:00 AM), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.
[22] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know.
[23] *Id.*

a.  Actual identity theft;

b.  Trespass, damage to, and theft of their personal property including PII;

c.  Improper disclosure of their PII;

d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

e.  Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their PII;

f.  Ascertainable losses in the form of time taken to respond to identity theft and attempt to restore identity, including lost opportunities and lost wages from uncompensated time off from work;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h.  The loss of use of and access to their credit, accounts, and/or funds;

i.  Damage to their credit due to fraudulent use of their PII; and/or

j.  Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

59.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard security measures and safeguards. Defendant has shown itself wholly incapable of protecting Plaintiff's and the Class's Private Information.

60.    Plaintiff and Class Members also have an interest in ensuring that their Private Information that was provided to Defendant is removed from all Defendant servers, systems, and files.

61.    Defendant itself acknowledged the harm caused by the Data Breach because it offered Plaintiff and Class Members woefully inadequate monitoring services. A limited time of identity theft and monitoring services is, however, inadequate to protect Plaintiff and Class Members from a lifetime of identity theft risk.

62.    Defendant further acknowledged that the Data Breach would cause inconvenience to affected individuals and that financial harm would likely occur because it advised individuals to enroll in credit monitoring.

63.    Defendant was aware, or should have been aware, of the risks and harm that could result from inadequate data security.

64.    At Defendant's suggestion, Plaintiff and the Class are desperately trying to mitigate the damage that Defendant has caused them.

65.    Given the kind of Private Information Defendant made accessible to hackers, however, Plaintiff and the Class are certain to incur additional damages. Because identity thieves have their PII, Plaintiff and all Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[24]

66.    The risks of harm to Plaintiff and Class Members were reasonably foreseeable and Defendant knew or should have known of these foreseeable risks of harm.

67.    None of this should have happened because the Data Breach was entirely preventable.

_____

[24] *What happens if I change my Social Security number*, LEXINGTON LAW (Aug. 10, 2022), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

**D. Defendant was Aware of the Risk of Cyberattacks.**

68.     Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell you the names of some of the biggest cybersecurity breaches: Target,[25] Yahoo,[26] Marriott International,[27] Chipotle, Chili's, Arby's,[28] and others.[29]

69.     The number of data breach victims has surpassed 1 billion for the first half of 2024, according to the Identity Theft Resource Center.[30]

70.     Defendant should certainly have been aware, and indeed was aware, that it was at risk of a data breach that could expose the PII that it collected and maintained.

71.     Defendant was clearly aware of the risks it was taking and the harm that could result from inadequate data security but threw caution to the wind.

72.     Betterment (1) had deficient security measures to protect the Private Information it stored for its current and former customers; (2) was aware or should have been aware of the risk of harm to its customers in the event of a data breach; (3) knew or should have known of the

---

[25] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.

[26] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

[27] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/ (last visited Feb. 6, 2026).

[28] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018, 12:58 PM), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

[29] *See, e.g.*, Michael Hill and Dan Swinhoe, *The 15 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Nov. 8, 2022), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

[30] https://www.usatoday.com/story/money/2024/07/18/data-breach-what-to-do/74441060007/.

foreseeable harms caused by cyberattacks; and (4) negligently failed to safeguard Plaintiff's and Class Members' Private Information.

73.    Despite its assurances to customers regarding safeguarding PII, Defendant negligently failed to implement adequate security measures to safeguard the Private Information of Plaintiff and Class Members.

### E.  Defendant Failed to Comply with FTC Guidelines and Industry Standards for Cybersecurity.

74.    Data breaches are preventable.[31] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[32] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[33]

75.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[34]

76.    In a data breach like this, many failures laid the groundwork for the Breach.

77.    The FTC has published guidelines that establish reasonable data security practices for businesses.

---

[31] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at https://lawcat.berkeley.edu/record/394088.
[32] *Id.* at 17.
[33] *Id.* at 28.
[34] *Id.*

78.    The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[35]

79.    The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.

80.    The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

81.    Upon information and belief, Defendant failed to maintain many reasonable and necessary industry standards necessary to prevent a data breach, including the FTC's guidelines.

82.    Upon information and belief, Defendant also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are respected authorities in reasonable cybersecurity readiness.

83.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[36]

---

[35] *Protecting Personal Information: A Guide for Business*, FTC, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

[36] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

84.    To prevent the Data Breach, Defendant could and should have implemented, as recommended by the Federal Bureau of Investigation, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[37]

85.    Further, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

---

[37] *Id.* at 3–4.

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, including those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about

known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[38]

86.     In addition, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Secure internet-facing assets**

    -     Apply latest security updates

    -     Use threat and vulnerability management

    -     Perform regular audit; remove privileged credentials

- **Thoroughly investigate and remediate alerts**

    -     Prioritize and treat commodity malware infections as potential full compromise;

- **Include IT Pros in security discussions**

    -     Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

- **Build credential hygiene**

---

[38] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), available at https://www.cisa.gov/news-events/news/protecting-against-ransomware.

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

- **Apply principle of least-privilege**

  - Monitor for adversarial activities

  - Hunt for brute force attempts

  - Monitor for cleanup of Event Logs

  - Analyze logon events

- **Harden infrastructure**

  - Use Windows Defender Firewall

  - Enable tamper protection

  - Enable cloud-delivered protection

  - Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[39]

87.     Given that Defendant was storing the PII of thousands of individuals, Defendant could have, and should have implemented all of the above measures to prevent and detect cyberattacks.

88.     Specifically, among other failures, Defendant had far too much confidential unencrypted information held on its systems. Such PII should have been segregated into an encrypted system.[40]

89.     Moreover, it is a well-established industry standard practice for a business to

---

[39] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

[40] *See, e.g.,* Adnan Raja, *How to Safeguard Your Business Data with Encryption*, FORTRA (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

dispose of confidential PII once it is no longer needed.

90.     The FTC, among others, has repeatedly emphasized the importance of disposing unnecessary PII, saying simply: "Keep sensitive data in your system only as long as you have a business reason to have it.  Once that business need is over, properly dispose of it.  If it's not on your system, it can't be stolen by hackers."[41]  Defendant, rather than following this basic standard of care, kept thousands of individuals' unencrypted PII indefinitely.

91.     In sum, the Data Breach could have readily been prevented through the use of industry standard network segmentation and encryption of all PII.

92.     Defendant failed to follow FTC guidelines and industry standards for safeguarding and protecting the PII of Plaintiff and Class Members against unauthorized disclosures to third parties.

93.     Further, the scope of the Data Breach could have been dramatically reduced had Defendant utilized proper record retention and destruction practices.

**F.  Plaintiff's Individual Experience.**

*Plaintiff Steven Daley*

94.     Upon information and belief, Plaintiff Daley is a former Betterment customer.

95.     Plaintiff Daley was required to provide his Private Information to Betterment through as part of its business practices to use its services.

96.     Upon information and belief, Defendant was in possession of Plaintiff's Private Information before, during, and after the Data Breach.

97.     Because of the Data Breach, there is no doubt Plaintiff Daley's highly confidential

---

[41] *Protecting Personal Information: A Guide for Business*, FTC, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, at p. 6.

Private Information is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal data they can exploit by selling on the dark web. As such, Plaintiff Daley and the Class are at an imminent risk of identity theft and fraud.

98.     As a result of the Data Breach, Plaintiff Daley estimates he has already expended approximately three (3) hours of his time mitigating the harms of the Data Breach and will need to do so on a weekly basis. As such, Plaintiff Daley has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that he is protected from identity theft, and reviewing account statements, credit reports, and/or other information.

99.     Plaintiff Daley places significant value on the security of his Private Information and does not readily disclose it. Plaintiff Daley has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

100.     Upon information and belief, Plaintiff has noticed a significant uptick in spam calls and emails which Plaintiff did not receive prior to the Breach.

101.     Plaintiff Daley has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information compromised by the Data Breach. Indeed, Defendant acknowledged the present and increased risk of future harm Plaintiff Daley, and the Class now face by informing them to remain vigilant moving forward.

102.     Knowing that thieves intentionally targeted and accessed his Private Information, including his Social Security number, has caused Plaintiff Daley great anxiety beyond mere worry.

103.    The Data Breach has caused Plaintiff Daley to suffer fear, anxiety, and stress, which has been compounded by Defendant's delay in noticing him of the fact that his Private Information was accessed and/or acquired by criminals as a result of the Data Breach.

104.    Plaintiff Daley has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff's and the Class's Private Information will be wholly unprotected and at-risk of future data breaches.

105.    Plaintiff Daley has suffered injuries directly and proximately caused by the Data Breach, including: (i) theft of his valuable Private Information; (ii) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by his Private Information being placed in the hands of cybercriminals; (iii) damages to and diminution in value of his Private Information that was entrusted to Defendant with the understanding that Defendant would safeguard this information against disclosure; (iv) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff Daley should have received from Defendant and Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect his Private Information; and (v) continued risk to his Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendant.

## V.    CLASS ACTION ALLEGATIONS

106.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated here.

107.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following class:

> **All persons whose Private Information was accessed or compromised by the Data Breach (the "Class").**

108.    Excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

109.    Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

110.    Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendant's own business records or electronic media can be utilized for the notice process.

111.    **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. Although the true number of affected individuals is unknown to Plaintiff, upon information and belief, he estimates that the Class is comprised of more than one million individuals.[42] The number of affected individuals may be obtained by Defendant's records.

112.    **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. Defendant's inadequate data security gave rise to Plaintiff's claims and are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive PII compromised in the same way by the same conduct of Defendant.

---

[42] https://haveibeenpwned.com/Breach/Betterment (last visited Feb. 6, 2026).

113.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and their counsel.

114.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendant's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

115.    Information concerning Defendant's policies is available from Defendant's records.

116.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

      a.    Whether Defendant engaged in the wrongful conduct alleged herein;

b.  Whether Defendant failed to adequately safeguard Plaintiff's and the Class's PII;

c.  Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their PII, and whether it breached this duty;

d.  Whether Defendant breached its duties to Plaintiff and the Class;

e.  Whether Defendant failed to provide adequate cyber security;

f.  Whether Defendant knew or should have known that its computer and network security systems were vulnerable to cyber-attacks;

g.  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its company network;

h.  Whether Defendant was negligent in permitting unencrypted PII off vast numbers of individuals to be stored within its network;

i.  Whether Defendant was negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

j.  Whether Defendant breached implied contractual duties to Plaintiff and the Class to use reasonable care in protecting their PII;

k.  Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

l.  Whether Defendant continues to breach duties to Plaintiff and the Class;

m.  Whether Plaintiff and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

n.  Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief; and

o.  Whether Defendant's actions alleged herein constitute gross negligence, and whether Plaintiff and Class Members are entitled to punitive damages.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

117.  Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

118.  Defendant solicited, gathered, and stored the Private Information of Plaintiff and Class Members as part of its business practices.

119.  Upon accepting and storing the Private Information of Plaintiff and Class Members on its computer systems  and networks, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information of Plaintiff and the Class from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

120.  Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed. Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class Members had no ability to protect their Private Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

121.  Because of this special relationship, Defendant required Plaintiff and Class

Members to provide their Private Information, including names, addresses, and other Private Information.

122.    Implied in these exchanges was a promise by Defendant to ensure that the Private Information of Plaintiff and Class Members in its possession was only used for the provided purpose and that Defendant would destroy any Private Information that it was not required to maintain.

123.    As part of this special relationship, Defendant had a duty to perform with skill, care, and reasonable expedience and faithfulness.

124.    Through Defendant's acts and omissions, including Defendant's failure to provide adequate data security, its failure to protect Plaintiff's and Class Members' Private Information from being foreseeably accessed, and its improper retention of Private Information it was not required to maintain, Defendant negligently failed to observe and perform its duty.

125.    Plaintiff and Class Members did not receive the benefit of the bargain with Defendant, because providing their Private Information was in exchange for Defendant's implied agreement to secure and keep it safe and to delete it once no longer required.

126.    Defendant was aware of the fact that cybercriminals routinely target companies and corporations through cyberattacks in an attempt to steal customer's Private Information. In other words, Defendant knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures.

127.    Defendant owed Plaintiff and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard

or delete such data and providing notification to Plaintiff and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

128.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

129.    Defendant had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiff, and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiff's and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems;

c.    To implement processes to quickly detect a data breach, security incident, or intrusion involving its networks, email accounts, and servers; and

d.    To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

130.     Plaintiff and the Class were the intended beneficiaries of Defendant's duties,

creating a special relationship between them and Defendant. Defendant was in a position to ensure that its systems were sufficient to protect the Private Information that Plaintiff and the Class had entrusted to it.

131.    Plaintiff's injuries and damages, as described herein, are a reasonably certain consequence of Defendant's negligence and breach of its duties.

132.    Defendant breached its duties of care by failing to adequately protect Plaintiff's and Class Members' Private Information. Defendant breached its duties by, among other things:

a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, and protecting the Private Information in its possession;

b.    Failing to protect the Private Information in its possession using reasonable and adequate security procedures and systems;

c.    Failing to consistently enforce security policies aimed at protecting Plaintiff and the Class's Private Information;

d.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

e.    Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

133.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

134.    As a direct and proximate result of Defendant's negligent conduct, including but not limited to its failure to implement and maintain reasonable data security practices and procedures as described above, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

135.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

136.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigating damages.

137.    Plaintiff and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

138.    Plaintiff and Class Members could have enrolled in credit monitoring, could have instituted credit freezes, and could have changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

139.    Plaintiff and Class Members have suffered harm from the delay in notifying them of the Data Breach.

140.    As a direct and proximate cause of Defendant's conduct, including but not limited to its failure to implement and maintain reasonable security practices and procedures, Plaintiff and Class Members have suffered, as Plaintiff have, and/or will suffer injury and damages, including but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost opportunity

costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of its customers in its continued possession; and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiff and the Class are entitled to damages in an amount to be proven at trial.

141.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's negligent conduct.

142.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE *PER SE***
**<u>(On Behalf of Plaintiff and the Class)</u>**

143.    Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

144.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendant had a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and the Class.

145.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

146.    Defendant gathered and stored the Private Information of Plaintiff and the Class as part of their business which affects commerce.

147.    Defendant violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

148.    Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class Members' Private Information, and by failing to provide prompt notice without reasonable delay.

149.    Defendant's multiple failures to comply with applicable laws and regulations constitutes negligence *per se*.

150.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

151.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

152.    Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Private Information.

153.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

154.    Defendant's violations of the FTC Act constitute negligence *per se*.

155.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

156.    The injury and harm that Plaintiff and Class Members suffered (as alleged above) was the direct and proximate result of Defendant's negligence *per se*.

157.    Plaintiff and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

158.    Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

159.    Plaintiff and the Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect their Private Information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

160.    Plaintiff and the Class were required to, and delivered, their Private Information to Defendant as part of the process of obtaining services.

161.    Plaintiff and Class Members conferred a monetary benefit on Defendant in that Plaintiff were required to pay Defendant for services, a portion of which should have been specifically allocated towards adequate data security.

162.    Without the Private Information provided by Plaintiff and Class Members, Defendant could not derive revenue from its regular business activities. A portion of the revenue derived from the services provided to Plaintiff and Class Members was to be used to provide a reasonable level of data security and reasonable data security practices. The amount of revenue to be allocated to data security is known to Defendant.

163.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of services and implicitly agreed to protect their Private Information from data breaches and keep it confidential and secured.

164.    The implied promise included consideration beyond those pre-existing general duties owed under state and federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines and industry standards on data security.

165.    The implied promises include but are not limited to: (1) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its agents is restricted and limited to achieve an authorized purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the Private Information against data breaches; (5) applying or requiring proper encryption; (6) multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

166.    Based on this implicit understanding, Plaintiff and Class Members accepted Defendant's offers and provided Defendant with their Private Information to obtain services.

167.    Plaintiff and Class Members would not have permitted their Private Information to be collected and stored by Defendant had they known that Defendant would not safeguard their

37

Private Information, as promised, or provide timely notice of a data breach.

168.    Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

169.    Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

170.    Upon information and belief, Defendant has not provided Plaintiff and the Class with information regarding the root cause of the Data Breach and the steps Defendant is taking to ensure that the Private Information remains safe and protected from further disclosures.

171.    The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

172.    Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

173.    Plaintiff alleges this claim in the alternative to his breach of contract claim.

174.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and commercialized and used Plaintiff's and Class Members' Private Information for business purposes.

175.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiff and Class Members.

176.    As such, a portion of the payments made for the benefit of or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

177.    Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

178.    Defendant acquired the Private Information through inequitable means as it failed to disclose the inadequate data security practices previously alleged. If Plaintiff and Class Members had known that Defendant would not fund adequate data security practices, procedures, and protocols to sufficiently monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information to Defendant or obtained services from Defendant.

179.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to their own benefit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

180.    Plaintiff and Class Members have no adequate remedy at law.

181.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

182.    As a direct and proximate result of Defendant's conduct, Plaintiff and other Class Members, have suffered actual harm in the form of experiencing specific acts of fraudulent activity and other attempts of fraud that required Plaintiff' efforts to prevent from succeeding.

183.    As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Defendant and all other relief allowed by law.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.  For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and his counsel as Class Counsel;

b.  A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including compensatory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order requiring Defendant to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e.  A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.  An award of such other and further relief as this Court may deem just and proper.

## VIII.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated:  February 6, 2026                     Respectfully submitted,

<u>/s/ William B. Federman</u>
William B. Federman
NY Bar # 2215341
Jessica A. Wilkes*
**Federman & Sherwood**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
E: wbf@federmanlaw.com
E: jaw@federmanlaw.com

***Attorney for Plaintiff and the Putative Class***

***\*Pro hac vice forthcoming***